**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KARA SIEGRIST,<br>Plaintiff,<br>v.<br>FEDERAL EXPRESS CORPORATION<br>and<br>SAM TRUSIK,<br>Defendants. | CIVIL ACTION NO. ____________<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Kara Siegrist, by and through her attorney, complaining of Defendants Federal Express Corporation and Sam Trusik, hereby alleges and avers as follows.

## PARTIES

1. Plaintiff Kara Siegrist is an adult individual residing in King of Prussia, Pennsylvania.

2. Defendant, Federal Express Corporation ("FEC"), is the surviving entity following the merger of FedEx Ground Package System, Inc. into FEC, effective June 1, 2024. FEC has a principal office located at 1000 FedEx Drive in Moon Township, Pennsylvania 15108.

3. At all relevant times, FEC operated the Bridgeport terminal (also known as its King of Prussia terminal) located at 601 River Road, Bridgeport, Pennsylvania 19405.

4. Defendant, Sam Trusik, is an adult individual who, at all relevant times, was FEC's Senior Manager for the Bridgeport terminal.

5. Plaintiff was hired as a driver for Skytop, Inc., a trucking company that performs so-called "last mile" contract delivery services for FEC, in 2018. She was promoted in 2021 and,

until the termination of her employment on July 25, 2025, worked as Skytop's Manager and FEC Business Contact.

**JURISDICTION AND VENUE**

6. This Court has original jurisdiction over Plaintiff's claims arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.* ("ADA"), because those claims arise under federal law. 28 U.S.C. § 1331.

7. This Court has supplemental jurisdiction over Plaintiff's claims under the Pennsylvania Human Relations Act, 43 P.S. §§ 951–963 ("PHRA"), and Pennsylvania common law because those claims arise from the same nucleus of operative facts and controversy as her federal claims. 28 USCS § 1367(a).

8. This Court has personal jurisdiction over FEC because FEC conducts business in Pennsylvania, has a principal headquarters office in Pennsylvania, operates the Bridgeport terminal in Pennsylvania, and the conduct giving rise to Plaintiff's claims occurred in Pennsylvania.

9. This Court has personal jurisdiction over Trusik because, at all relevant times, he worked for FEC in Pennsylvania as Senior Manager of the Bridgeport terminal and personally participated in conduct alleged herein.

10. Venue is proper in this District because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District. 28 USCS § 1391(b)(2).

11. Venue is also proper because this is the judicial district in the Commonwealth in which the alleged unlawful employment practices occurred and where Plaintiff would have continued working but for those practices. 42 USCS § 2000e-5 (f)(3).

12. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 24, 2025, which was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

13. The EEOC issued Plaintiff a Determination and Notice of Right to Sue on September 4, 2026, a true and correct copy of which is attached as Exhibit "A."

14. This action is filed within ninety (90) days of the date on which the EEOC issued its Determination and Notice of Right to Sue.

15. More than one year has elapsed since Plaintiff's PHRC charge was filed, so Plaintiff is entitled to pursue her PHRA claims in court.

## FACTUAL ALLEGATIONS

16. Plaintiff began working for Skytop approximately seven years before her termination. She was hired as a driver and subsequently promoted to Manager approximately four years before her termination.

17. Skytop designated Plaintiff as its Business Contact for FEC's day-to-day operations at the Bridgeport terminal. In that role, Plaintiff coordinated drivers, trucks, pickups, deliveries, shipping issues, and customer-service matters with FEC personnel.

18. Plaintiff worked at FEC's Bridgeport terminal approximately six days per week, generally from 7:00 a.m. until noon, and regularly continued working from a home office until approximately 3:00 p.m. handling shipping, customer, and operational issues involving and working with FEC personnel.

19. FEC required Plaintiff, in her role as Skytop's FEC Business Contact, to know and follow FEC policies and procedures, attend mandatory monthly in-person meetings conducted by FEC management, remain available to address operational issues, and receive instructions from

FEC management concerning contractor performance, customer ratings, policy changes, and driver procedures.

20. FEC management evaluated Plaintiff's work, raised concerns directly with Skytop's President, Charles Perna, and exercised practical authority over whether Plaintiff could continue serving as Skytop's FEC Business Contact at the Bridgeport terminal.

21. Plaintiff was diagnosed with post-traumatic stress disorder ("PTSD") in 2020 following years of physical and mental abuse by her now-deceased husband.

22. Plaintiff's PTSD is triggered by unwanted physical contact, particularly when a person approaches her from behind without warning and touches or embraces her.

23. At all relevant times, Plaintiff was qualified to perform the essential functions of her position as Skytop's Manager and FEC Business Contact, with or without reasonable accommodation. Plaintiff had performed successfully in that role from approximately 2021 until her termination on July 25, 2025.

24. Plaintiff disclosed her PTSD diagnosis to Skytop President Charles Perna in 2020 and, following the events described below, to FEC People Operations Specialist Samia Hawkins in July 2025.

25. In April 2025, FEC Operations Coordinator Marilyn Thompson accused Plaintiff of making a racist comment after she overheard Plaintiff make a comment to another FEC employee comparing the terminal's operations to those of the City of Philadelphia under Mayor Cherelle Parker.

26. Plaintiff denied making a racist comment. Following her accusation, Thompson refused to take Plaintiff's calls or coordinate Sunday loads and drivers with her, thereby

impairing Plaintiff's ability to perform operations and fulfill Skytop deliveries for FEC customers.

27. In mid-May 2025, Plaintiff complained to Trusik that Thompson was refusing to work with her because of the perceived racist remark. Trusik discounted Plaintiff's complaint by attributing Thompson's delays in responding and refusals to work with Plaintiff to the Terminal being short-staffed on Sundays.

28. In early June 2025, shortly after Plaintiff's complaint about Thompson to Trusik, Trusik met with Perna and stated that FEC was having issues with Plaintiff, citing the alleged racist remark, as well as alleged issues with paperwork and service matters.

29. Around the same time, FEC Safety Specialist Rich Dysinger asked Plaintiff to arrange a truck for him to use in the Pennsylvania Truck Driving Championships after his own truck became unavailable. The Championships were scheduled to occur at the Kalahari Resort in the Poconos on June 13–14, 2025.

30. The Pennsylvania Truck Driving Championships were a work-related industry event for Plaintiff and FEC. Dysinger managed and participated in the competition, wore FEC-branded clothing, drove an FEC-branded truck, and represented FEC during the event.

31. In the week before the Championships, Dysinger told Plaintiff he would repay her for obtaining a truck for him but could not tell her how over the phone. Plaintiff found his comment disturbing and inappropriate.

32. On June 13, 2025, Plaintiff attended the Pennsylvania Truck Driving Championships at the Kalahari Resort in Mount Pocono, Pennsylvania, with Skytop drivers and her cousin, Frederick Hill.

33. That evening, while Plaintiff was eating dinner with Hill, Dysinger approached Plaintiff from behind without warning, knowledge, or permission, put his arms around her, and began massaging her shoulders and whispering in her ear.

34. Plaintiff immediately yelled at Dysinger to remove his hands. Hill also yelled at Dysinger, shouting "What the f**k are you doing?!?" Dysinger removed his hands and left.

35. Dysinger's unwanted touching and whispering occurred after he made a disturbing comment to Plaintiff that he intended to repay her for arranging a truck for him but could not say how over the phone. Dysinger's conduct retriggered Plaintiff's PTSD and caused her severe anxiety, panic attacks, difficulty sleeping, depression, and emotional distress.

36. On or about June 15, 2025, Plaintiff reported Dysinger's conduct to FEC Pickup and Delivery Manager Joe Wagner. Wagner subsequently reported the matter to FEC Human Resources on Plaintiff's behalf because she was too upset to do so on her own.

37. When FEC People Operations Specialist Samia Hawkins contacted Plaintiff about filing a formal complaint two days later, Plaintiff disclosed that she had PTSD, explained that the incident had left her too distraught to proceed immediately, and requested time to process the incident before deciding whether to submit a formal complaint.

38. Hawkins said she understood and invited Plaintiff to contact her when Plaintiff was ready to proceed.

39. On June 26, 2025, Plaintiff learned that part-time driver Mark Ibrahim made numerous sexual comments about her to Skytop driver Charles Colson and told Colson he would pay a large amount of money to see Plaintiff sexually assaulted in a violent manner. Plaintiff directed Colson to report the matter to FEC terminal security, which promptly removed Ibrahim from the terminal and later confirmed that he was disqualified from returning.

40. Shortly after the June 26, 2025, incident was reported, Trusik again contacted Perna and encouraged him to replace Plaintiff as Skytop's FEC Business Contact. Trusik cited alleged contract violations, asserted that Plaintiff did not have Skytop's best interests at heart, and warned Perna that Skytop could lose its FEC contract if conditions did not change.

41. At the time, Skytop was negotiating a renewal of its FEC contract. FEC had proposed a two-year renewal that reduced Skytop's revenue by 2.5 percent, despite Perna's request for improved revenue terms. The negotiations had proceeded in this manner for several months.

42. On July 18, 2025, Trusik told Perna that he wanted Plaintiff removed from the Business Contact position or FEC would issue an Opportunity to Cure letter. Perna understood an Opportunity to Cure letter to be the first step toward FEC's termination of its contract with Skytop.

43. Perna believed that the concerns raised by Trusik, whether considered individually or together, did not warrant Plaintiff's termination, but he felt compelled to replace Plaintiff because of FEC's threatened contractual action. After finding and securing her replacement, Perna terminated Plaintiff's employment on July 25, 2025.

44. In the week following Plaintiff's termination, FEC informed Perna that it had found a way to improve Skytop's contract revenues. Thereafter, the company offered Skytop contract renewal terms with increased revenue percentages, which Perna accepted.

45. On July 29, 2025, Plaintiff contacted People Operations Specialist Hawkins to pursue her complaints against Dysinger and Trusik. On August 4, 2025, Plaintiff provided Hawkins detailed information concerning her complaints, informed Hawkins of her termination

from employment with Skytop at Trusik's direction, reminded Hawkins of her PTSD diagnosis, and provided Hill's and Perna's contact information as supporting witnesses for her complaints.

46. On September 2, 2025, Hawkins informed Plaintiff that FEC's investigation was complete and she could not disclose its outcome.

47. Although Plaintiff identified Hill and Perna as witnesses and provided their contact information to Hawkins, they told her they were never contacted or interviewed by anyone employed by or representing FEC in connection with its investigation.

48. After FEC purportedly completed its investigation, Perna told Plaintiff he attended a meeting at the Bridgeport terminal and observed Dysinger present and participating in the meeting.

49. FEC exercised substantial control over Plaintiff's work, including the location and schedule of her work, her work rules, the way she performed her Business Contact duties, and the continued viability of her employment through FEC's control over Skytop's contract.

50. FEC also exercised practical authority over Plaintiff's continued employment by using its contract-enforcement authority and the threatened loss of Skytop's FEC contract to compel Plaintiff's removal and termination.

51. Skytop depended on FEC as its sole client, and Plaintiff's removal from the Business Contact position effectively required the termination of her employment because Skytop had no other position available for her.

52. FEC, through Trusik, used the threatened issuance of an Opportunity to Cure letter and the prospect of contract termination to compel Skytop to remove Plaintiff from her FEC Business Contact position and terminate her employment.

## COUNT I — SEX DISCRIMINATION AND HOSTILE WORK ENVIRONMENT UNDER TITLE VII AGAINST FEC

53. Plaintiff incorporates by reference Paragraphs 1 through 52 as though fully set forth herein.

54. Plaintiff was subjected to unwelcome conduct because of her sex, including Dysinger's unwanted physical touching, embrace, shoulder massage, and whispering in Plaintiff's ear.

55. Dysinger's conduct was physically intrusive, humiliating, and traumatic to Plaintiff. It occurred at a work-related event while Dysinger was acting as an apparent FEC representative.

56. Plaintiff promptly reported the conduct to FEC Pickup and Delivery Manager Wagner, who reported Dysinger's conduct to FEC Human Resources on Plaintiff's behalf. Accordingly, FEC had actual notice of the complained of sexual harassment.

57. After Plaintiff later pursued a formal complaint, she provided People Operations Specialist Hawkins with the names and contact information for Hill and Perna as witnesses in support of her claims. Neither Hill nor Perna was contacted or interviewed during FEC's investigation.

58. FEC allowed Dysinger to continue working at the Bridgeport terminal and participating in terminal meetings after Plaintiff's report and after FEC represented that its investigation was complete.

59. FEC was Plaintiff's joint employer because it exercised significant control over Plaintiff's work and materially influenced the decision to terminate her employment.

**COUNT II — RETALIATION UNDER TITLE VII AGAINST FEC**

60. Plaintiff incorporates by reference Paragraphs 1 through 59 as though fully set forth herein.

61. Plaintiff engaged in protected activity under Title VII when she reported Dysinger's unwanted sex-based physical conduct to Wagner and Hawkins, provided information in support of FEC's investigation, directed the reporting of Ibrahim's graphic sexual remarks about her to FEC security, and later pursued her sexual harassment and retaliation complaints against Dysinger and Trusik with FEC.

62. FEC, acting through Trusik, subjected Plaintiff to materially adverse action by pressuring Skytop to remove Plaintiff as Business Contact and by threatening consequences to Skytop's contract unless Plaintiff was replaced.

63. Plaintiff's coerced removal as FEC Business Contact caused the termination of her employment with Skytop on July 25, 2025.

64. The close timing between Plaintiff's protected activity and Trusik's escalating pressure on Perna, together with the threatened Opportunity to Cure letter and Skytop's contract-renewal circumstances, is strong evidence that FEC retaliated against Plaintiff for her protected activity.

**COUNT III — DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE UNDER THE ADA AGAINST FEC**

65. Plaintiff incorporates by reference Paragraphs 1 through 64 as though fully set forth herein.

66. Plaintiff has PTSD, a mental impairment that substantially limits major life activities during periods of trauma and acute symptoms.

67. Plaintiff was qualified to perform the essential functions of her Manager and FEC Business Contact position, with or without reasonable accommodation.

68. FEC knew of Plaintiff's PTSD when Plaintiff disclosed her diagnosis and explained that she needed time to process Dysinger's conduct before submitting a formal complaint.

69. Plaintiff's request for time to process the incident before formally proceeding was a request for a reasonable accommodation related to her disability.

70. Rather than engage in an interactive process and provide Plaintiff a meaningful accommodation, FEC used Plaintiff's disability-related request and need for time and the circumstances surrounding her report of harassment as a basis for pressuring Skytop to remove and terminate her.

71. FEC was Plaintiff's joint employer because it exercised substantial control over the conditions of Plaintiff's work and used its contractual leverage to effectively force the termination of her employment.

**COUNT IV — RETALIATION UNDER THE ADA AGAINST FEC**

72. Plaintiff incorporates by reference Paragraphs 1 through 71 as though fully set forth herein.

73. Plaintiff has PTSD, which substantially limited one or more major life activities during the relevant period. Plaintiff disclosed her PTSD to Hawkins after Dysinger's unwanted physical conduct retriggered symptoms including anxiety, panic attacks, sleep difficulty, emotional distress, and depression.

74. Plaintiff engaged in protected activity under the ADA by disclosing her PTSD to FEC, explained that she was too distraught to proceed immediately with a formal complaint, and requested time to process the incident before proceeding.

75. After Plaintiff's disability disclosure and request for time, FEC, through Trusik, increased pressure on Skytop to replace Plaintiff as Business Contact and threatened contractual consequences unless Skytop did so.

76. FEC's conduct caused Plaintiff to suffer materially adverse employment action when Skytop removed Plaintiff from the Business Contact role and terminated her employment on July 25, 2025.

77. Plaintiff's disability disclosure and protected activity were motivating factors in FEC's actions to force Plaintiff's removal and termination by Skytop.

## COUNT V — SEX DISCRIMINATION AND HOSTILE WORK ENVIRONMENT UNDER THE PHRA AGAINST FEC

78. Plaintiff incorporates by reference Paragraphs 1 through 77 as though fully set forth herein.

79. Plaintiff was subjected to unwelcome sex-based harassment by Dysinger, an FEC Safety Specialist.

80. FEC knew of the harassment, failed to conduct an adequate investigation, and failed to take prompt and appropriate action reasonably calculated to protect Plaintiff and end the harassment.

81. FEC acted as Plaintiff's joint employer by controlling significant conditions of Plaintiff's work and exercising practical authority over Plaintiff's continued employment with Skytop.

## COUNT VI — DISABILITY DISCRIMINATION AND RETALIATION UNDER THE PHRA AGAINST FEC

82. Plaintiff incorporates by reference Paragraphs 1 through 81 as though fully set forth herein.

83. Plaintiff was diagnosed with PTSD, a disability within the meaning of the PHRA.

84. FEC knew of Plaintiff's disability and her need for time to process the sexual harassment before making a formal report.

85. FEC failed to provide a meaningful reasonable accommodation and instead used its contractual leverage to cause Plaintiff's removal and termination shortly after her disability disclosure and accommodation request.

86. Plaintiff also engaged in protected activity by reporting sexual harassment, disclosing her disability, seeking an accommodation, reporting the Ibrahim incident, and pursuing FEC's internal investigation.

87. FEC retaliated against Plaintiff by pressuring Skytop to replace her as FEC Business Contact and terminate her employment shortly after she engaged in protected activities and before she was able to file a formal complaint and pursue an internal investigation with FEC People Operations Specialist Samia Hawkins.

**COUNT VII — ADA INTERFERENCE AGAINST FEC**

88. Plaintiff incorporates by reference Paragraphs 1 through 87 as though fully set forth herein.

89. Plaintiff exercised and attempted to exercise rights protected by the ADA when she disclosed PTSD, requested time to process the traumatic incident before deciding whether to make a formal complaint, and later pursued FEC's internal investigation.

90. FEC, through Trusik, used its contractual leverage over Skytop to pressure Skytop to remove Plaintiff from her position shortly after Plaintiff exercised those rights.

91. The threatened loss of Skytop's FEC contract and the resulting termination of Plaintiff's employment would deter a reasonable person from disclosing a disability, requesting disability-related assistance, or pursuing an internal discrimination investigation.

92. As a direct and proximate result of FEC's interference, Plaintiff suffered loss of employment, lost wages and employment benefits, emotional distress, and other damages.

**COUNT VIII — AIDING, ABETTING, COMPELLING, OR COERCING UNLAWFUL EMPLOYMENT PRACTICES UNDER THE PHRA AGAINST TRUSIK**

93. Plaintiff incorporates by reference Paragraphs 1 through 92 as though fully set forth herein.

94. At all relevant times, Trusik was FEC's Senior Manager for the Bridgeport terminal and personally participated in the conduct alleged herein.

95. Trusik contacted Skytop President Charles Perna and urged him to replace Plaintiff as Skytop's Business Contact, stated that Plaintiff did not have Skytop's best interests at heart, warned that Skytop could lose its FEC contract if conditions did not change, and later threatened to issue an Opportunity to Cure letter unless Skytop removed Plaintiff.

96. Trusik's conduct aided, abetted, incited, compelled, and coerced discriminatory and retaliatory actions against Plaintiff because of her sex, disability, opposition to sexual harassment, and disability-related protected activity.

97. As a direct and proximate result of Trusik's conduct, Plaintiff lost her employment, income, employment benefits, and professional standing and suffered emotional distress and other damages.

## COUNT IX — AIDING AND ABETTING DISCRIMINATION AND RETALIATION UNDER THE PHRA AGAINST TRUSIK

98. Plaintiff incorporates by reference Paragraphs 1 through 97 as though fully set forth herein.

99. Trusik personally participated in the discriminatory and retaliatory conduct directed toward Plaintiff.

100. After Plaintiff engaged in protected activity, Trusik repeatedly communicated alleged concerns about Plaintiff to Perna, urged Perna to replace Plaintiff as Business Contact, warned that Skytop could lose its FEC contract if conditions did not change, and threatened to issue an Opportunity to Cure letter unless Plaintiff was removed.

101. Trusik's conduct substantially assisted and encouraged FEC's discrimination and retaliation against Plaintiff and directly contributed to Plaintiff's removal and termination from employment.

## COUNT X — INTENTIONAL INTERFERENCE WITH EXISTING CONTRACTUAL RELATIONS AGAINST FEC AND, IN THE ALTERNATIVE, TRUSIK

102. Plaintiff incorporates by reference Paragraphs 1 through 101 as though fully set forth herein.

103. At all relevant times, Plaintiff had an existing employment relationship with Skytop, under which she served as Skytop's Manager and designated Business Contact with FEC.

104. Plaintiff engaged in conduct protected by the PHRA when she reported Dysinger's unwanted physical conduct, disclosed her PTSD, requested time to process the incident before making a formal complaint, reported the Ibrahim incident, and pursued an investigation into sexual harassment and retaliation.

105. After Plaintiff's protected activity, Trusik contacted Skytop President Charles Perna and urged him to replace Plaintiff as Skytop's FEC Business Contact, asserted that Plaintiff did not have Skytop's best interests at heart, and warned that Skytop could lose its FEC contract if conditions did not change.

106. On or about July 18, 2025, Trusik told Perna that Plaintiff needed to be removed from the Business Contact position before FEC issued an Opportunity to Cure letter, which Perna understood to be the first step toward termination of Skytop's FEC contract.

107. Perna understood that threat as coercive, felt compelled to replace Plaintiff to protect Skytop's business, and terminated Plaintiff's employment on July 25, 2025, notwithstanding his view that the alleged concerns did not warrant Plaintiff's termination.

108. Through the foregoing threats, coercion, and interference, FEC and Trusik interfered with Plaintiff's exercise and enjoyment of rights protected by the PHRA and caused Plaintiff to lose her employment, income, employment benefits, and professional standing.

109. FEC is liable for the acts of its managerial employee, Trusik, undertaken in connection with FEC's asserted enforcement of its contractual relationship with Skytop.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Kara Siegrist respectfully requests that judgment be entered in her favor and against Defendants, and that the Court award total damages in excess of $150,000, attributed as follows:

A. A declaration that Defendants engaged in unlawful discrimination, retaliation, and other unlawful conduct as alleged herein;

B. Back pay, lost employment benefits, prejudgment interest, and other economic losses in an amount to be determined;

C. Front pay or other appropriate equitable relief in lieu of reinstatement;

D. Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and other nonpecuniary losses;

E. Punitive damages to the extent permitted by law;

F. Reasonable attorneys' fees and costs to the extent permitted by law; and

G. Such other legal and equitable relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Date: November 19, 2026

/s/ Brian P. Kirby
Brian P. Kirby
Pa. Attorney I.D. No. 56345
171 W. Lancaster Avenue, Suite 100
Paoli, PA 19301
(610) 578-9050; (215) 880-6026 (cell)
(610) 578-9049 (fax)
brian@bpkirbylaw.com

*Attorney for Plaintiff,*
*Kara Siegrist*

**EXHIBIT A**

EEOC Determination and Notice of Right to Sue

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Philadelphia District Office**
801 Market St, Suite 1000
Philadelphia, PA 19107
(267) 589-9700
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 09/04/2026

**To:** Ms. Kara Siegrist
664 W Street
King Of Prussia, PA 19406
Charge No: 530-2026-00606

EEOC Representative and phone: Legal Unit
267-589-9707

---

### DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 530-2026-00606.

On behalf of the Commission,

Digitally Signed By: Karen McDonough
09/04/2026

Karen McDonough
Deputy District Director

**Cc:**
James Kirwan
Federal Express Corporation
1000 FedEx Dr
Moon Township, PA 15108

Matthew Banner
Federal Express Corporation
1000 FedEx Drive
Moon Township, PA 15108

Eleesa Harrell
Federal Express Corporation
1000 FEDEX DR
Coraopolis, PA 15108

NA NA
601 River Road
Bridgeport, PA 19405

Hattie Weaver
Federal Express Corporation
1000 FedEx Drive
Moon Township, PA 15108

Brian Kirby
Kirby Law
171 W Lancaster Ave, Suite 100
Paoli, PA 19301

Please retain this Notice for your records.